UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IRIS PAGE,

|  |  |  |
|---|---|---|
| | Plaintiff, | CIVIL ACTION NO. 11-12254 |
| vs. | | DISTRICT JUDGE BERNARD A. FRIEDMAN |
| COMMISSIONER OF<br>SOCIAL SECURITY, | | MAGISTRATE JUDGE MONA K. MAJZOUB |
| | Defendant. | |

_____/

## REPORT AND RECOMMENDATION

**I.      RECOMMENDATION:**  This Court recommends that Plaintiff's Motion for Summary

Judgment (docket no. 11) be denied, Defendant's Motion for Summary Judgment (docket no. 15)

be granted, and Plaintiff's complaint be dismissed.

**II.     PROCEDURAL BACKGROUND**

On December 6, 2007 Plaintiff protectively filed applications for a period of disability,

disability insurance benefits, and supplemental security income alleging disability beginning

December 6, 2007.  (TR 54).  The applications were denied and Plaintiff filed a timely request for

a *de novo* hearing.  On December 4, 2009 Plaintiff appeared with counsel in Oak Park, Michigan

and testified at a video hearing held by Administrative Law Judge (ALJ) Paul R. Armstrong, who

presided over the hearing from Chicago, Illinois.  (TR 11-48).  Vocational Expert (VE) Edward F.

Pagella also appeared and testified at the hearing.  In a January 13, 2010 decision the ALJ found that

Plaintiff was not entitled to disability benefits because the evidence showed that there were a

significant number of jobs existing in the national economy that Plaintiff could perform.  (TR 54-

64). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action for judicial review. The parties filed cross Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

## III. PLAINTIFF'S TESTIMONY AND RECORD EVIDENCE

### A. Plaintiff's Testimony

Plaintiff was forty-three years old on the alleged disability onset date. (TR 63). She graduated from high school and completed three years of college but did not obtain a college degree. (TR 44-45). Plaintiff lives in her home with her children. She has a driver's license but does not drive. (TR 27). She was employed as an automotive assembly line worker where she was expected to spend most of her day on her feet and lift at least fifty pounds. (TR 16).

Plaintiff testified that she broke her left ankle in 1993 and subsequently sustained a series of injuries to her right foot and ankle. (TR 16-17). She testified that she wears a brace to stabilize her left ankle. She attended the administrative hearing with a walker and has been given a prescription for a motorized wheelchair. (TR 17). She testified that she was assaulted by her ex-husband and sustained a compound fracture to her back and head injuries that cause recurrent headaches, which she treats with Percocet. (TR 18, 42-43). Plaintiff claims her headaches last approximately one hour and occur five to six times per week. (TR 42). She testified that she had a seizure in September 2009. (TR 24). She also testified that she has a history of a broken hand, she experiences numbness and tremors in her right hand, and cramps in both hands. (TR 26-27).

Plaintiff claims that she was hospitalized in a psychiatric hospital and upon discharge attended a daily outpatient psychiatric program. (TR 28). She claims she has a history of depression

2

and panic attacks, and claims that these conditions are controlled with medication.  (TR 41).

Plaintiff testified that she can sit for only ten minutes without pain, stand only five to ten minutes before needing to sit, and walk less than a block before her feet "give out" on her.  (TR 29-30).  She testified that she has three to four grand mal seizures each month.  (TR 31).  She states that she lays down to rest three to four hours in an eight-hour day.  (TR 34).  Plaintiff claims that she can watch television for approximately one to two hours before losing focus, and read a book approximately thirty minutes before her mind wanders.  (TR 36-38).  She testified that she is able to climb the stairs in her home to her upstairs bedroom.  (TR 38).

**B.**     **Medical Evidence**

Plaintiff has a medical history that includes among other ailments a left ankle fracture requiring open reduction and internal fixation, right elbow fracture, arthritis of the left ankle, a mild contusion to the right foot, low back pain diagnosed as acute myofascial strain of the lumbar spine, seizure disorder, panic attack, depression, hypertension, posttraumatic stress disorder, sleep apnea, and alcohol abuse.  As treatment for a trimalleolar right ankle fracture, Plaintiff was given a prescription for crutches and a Cam Walker and advised to begin gradual increase in weight bearing on her right ankle.  (TR 656-57).

On February 27, 2008 Dr. Surendra Kelwala of UnifiedMed evaluated Plaintiff on behalf of the state disability determination service.  (TR 648-51).  Plaintiff presented with complaints that she had "two broken feet, plates in my arms, I get seizures, I am depressed, I can't walk, can't work at my job, my feet give out on me, I fall, and I am in constant pain."  (TR 648).  Dr. Kelwala noted that Plaintiff is not engaged in any psychiatric treatment and has never seen a psychiatrist or been hospitalized.  Plaintiff reported that she gets along well with neighbors, friends, coworkers, and

3

employers.  She reported that her daughter and niece shop and handle the chores because she cannot stand up and do anything.  (TR 649).  Dr. Kelwala observed that Plaintiff's posture, gait, mannerisms, clothing, and hygiene were within normal limits, her contact with reality was unimpaired, her self esteem was low, and she had no tendency to exaggerate or minimize her symptoms.  (TR 649).  Plaintiff could report serial 7's, repeat five numbers forward and recall three numbers backward, recall three out of three objects after three minutes, and name five large cities.  (TR 650).  Dr. Kelwala diagnosed Plaintiff with secondary depression, moderately severe, and panic attacks, and assigned Plaintiff a Global Assessment of Functioning (GAF) score of 55.  (TR 650).

On March 16, 2008 psychiatrist Dr. Rose Moten-Solomon completed a Mental Residual Functional Capacity and Psychiatric Review Technique of Plaintiff.  (TR 659-79).  Dr. Solomon determined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instructions, and in her ability to maintain attention and concentration for extended periods, but otherwise was not significantly limited in her understanding and memory, sustained concentration and persistence, social interaction, and adaptation.  (TR 662-63).  She observed that Plaintiff's mental status was intact, and opined that her activities of daily living reveal limitations as a result of depressive symptoms attributed to pain.  Dr. Solomon concluded that the evidence does not support a mental functioning impairment that would significantly interfere with Plaintiff's ability to perform simple work activity.  (TR 664).  In other words, Plaintiff retained the mental capacity to engage in simple work activity.  Dr. Solomon's Psychiatric Review Technique indicates that Plaintiff has mild restrictions in activities of daily living and maintaining social functioning, moderate deficiencies in maintaining concentration, persistence, or pace, and no episodes of decompensation.  (TR 676).  Dr. Solomon opined that the evidence does not establish the presence

4

of "C" criteria.

On March 20, 2008 Dr. L. Patel of the Sierra Medical Group, PLC completed a physical medical evaluation of Plaintiff at the request of the state disability determination service. (TR 681-88). Dr. Patel noted that Plaintiff has a history of right elbow fracture, right foot fracture, a history of left foot problems, she walks with a cane and is unable to stand without support. (TR 681, 683). On physical examination Dr. Patel observed that Plaintiff was alert and oriented times three, had normal muscle tone in all extremities, no cerebellar ataxia, normal coordination with ability to do finger-to-nose test, and no evidence of neurosensory deficit in upper and lower extremities. (TR 682). Dr. Patel noted that Plaintiff is able to get dressed, button clothing, tie shoelaces, pick up a coin or pencil, and write. He observed that Plaintiff ambulates with an unpredictable gait, she was unable to heel, toe, or tandem walk, she was unable to bend, stoop, carry, push and pull, unable to squat and arise from squatting, and unable to get on and off the examination table. (TR 683, 686-87).

On April 1, 2008 Nikita Kennard completed a Physical Residual Functional Capacity Assessment of Plaintiff. (TR 689-96). Kennard documented that Plaintiff can lift or carry twenty pounds occasionally and ten pounds frequently, stand, walk, or sit six hours in an eight-hour day, with unlimited push or pull in the lower extremities. (TR 690). Kennard determined that Plaintiff had no postural, manipulative, visual, or communicative limitations. (TR 691-93). Kennard further opined that Plaintiff should avoid concentrated exposure to hazards such as machinery and heights but otherwise had no environmental limitations. (TR 693).

In April 2008 Plaintiff presented to the hospital after her ex-husband assaulted her with either a baseball bat or hammer. (TR 268). Plaintiff was diagnosed with a suspected fracture of the left

5

frontal sinus, nondisplaced nasal bone fracture, large left frontal parietal scalp hematoma, deformity of the distal diaphysis of the right 5th metacarpal bone, and alcohol intoxication. (TR 268). A CT of the head showed large amounts of soft tissue swelling but no intracranial hemorrhage or subarachnoid hemorrhage. (TR 272). A CT of the maxillofacial showed no evidence of obvious maxillofacial injury. A CT of the cervical spine showed no fractures or subluxations. The emergency room physician opined that Plaintiff had no obvious skull fracture or intracranial injury. (TR 274). Plaintiff received sutures to her forehead without complication and was discharged in stable condition. (TR 268, 270).

On May 19, 2008 Dr. Louis Rentz and Neuroradiologist Dr. Steven Seidman evaluated Plaintiff at the Michigan Institute for Neurological Disorders. (TR 276-80). An x-ray of the thoracic spine showed moderately advanced degenerative changes involving the cervical-thoracic junction, with mild compression deformity of the superior endplate of the T8 vertebral body. (TR 276, 294). X-ray of the lumbar spine revealed early degenerative type change. An MRI of the brain revealed deformity of the skin and subcutaneous soft tissue, but no acute ischemia, recent hemorrhage, or active neoplastic processes, and no acute intracranial abnormality. (TR 277). On physical examination, Dr. Rentz observed that Plaintiff's gait, heel-toe walking, and tandem gait were normal; finger-to-nose and heel-to-knee were well performed; sensory examination for pinprick, touch and vibration were within normal limits in all areas; Plaintiff's head was normocephalic without masses or skin abnormalities; and Plaintiff had full range of motion of the cervical spine without pain. (TR 278-80). Dr. Rentz observed that Plaintiff could bend and flex at the lumbar area, and laterally flex without aggravation of pain. She had full range of motion in the shoulder girdle. Plaintiff had tenderness on the left side of her head, evidence of a fractured wrist,

and a T8 compression fracture. (TR 280). Dr. Rentz opined that Plaintiff would recover over four to six weeks. He prescribed Xanax and Cymbalta for relaxation, Vicodin for pain relief, and Trileptal to control seizures. In April 2009 Dr. Rentz re-evaluated Plaintiff and opined that she could continue on Trileptal based on her seizure history although her clinical episodes of seizures were very infrequent. (TR 292). He opined that Plaintiff had some posttraumatic stress disorder secondary to her recent traumatic experiences, and noted that her traumatic head injury with concussion and cerebral scalp edema had resolved. (TR 292).

On May 29, 2008 Dr. Homer Linard of Tri County Orthopedics, P.C. evaluated Plaintiff for right hand injury and a followup of her right ankle fracture. (TR 290-91). Dr. Linard observed that Plaintiff was placed in a wrist splint after complaining of pain in her right hand following the assault. He noted that Plaintiff had some swelling and tenderness over the dorsum of the hand specifically over the third metacarpal with fairly good range of motion of the fingers. (TR 290-91). Examination of the right ankle revealed mild swelling and some tenderness along the joint line, yet Plaintiff was ambulating in a regular shoe. X-rays revealed a transverse fracture of the third metacarpal with good callus formation and indicated that Plaintiff was healing with a slight volar angulation. Dr. Linard recommended soaks and toe raising exercises to strengthen the right lower extremity, and he placed Plaintiff in a right hand fiberglass, ulnar gutter splint. (TR 290).

Plaintiff was re-evaluated by Dr. Linard in July 2008, at which time Dr. Linard observed that her right hand x-rays demonstrated satisfactory healing of the third metacarpal. (TR 289). Dr. Linard recommended physical therapy for Plaintiff's right ankle and right hand. On April 20, 2009 Plaintiff returned to Dr. Linard who noted that Plaintiff has known arthritis of the left ankle for which she wears an Arizona brace. (TR 287). He observed that Plaintiff has pain over the dorsum

of the right foot but no ankle pain, and her hand is sore from the assault that occurred in April 2008. On physical examination, Dr. Linard noted that Plaintiff had some tenderness but no swelling of the right hand, a fully healed third metacarpal fracture, no problems with her wrist or fingers, a ganglion cyst on the dorsum of the right foot with underlying tarsal metatarsal arthritis, and degenerative arthritis of the left ankle. (TR 287). Dr. Linard recommended that Plaintiff continue wearing the Arizona brace on the left ankle, but recommended no treatment for the right foot and right hand. He concluded that Plaintiff should discontinue chronic use of pain medicine. (TR 288).

On May 15, 2009 Orthopedic Spine Surgeon Dr. Roderick Claybrooks evaluated Plaintiff for complaints of neck pain, bilateral arm pain, back pain, and bilateral leg pain. (TR 726-29). Dr. Claybrooks observed that Plaintiff had not undergone any form of conservative treatment following the physical assault she endured from her ex-husband. He noted Plaintiff's complaints as follows: severe, constant pain in the left-sided neck with stiffness, cramping, and tension of the neck muscles and frontal headaches; numbness, tingling, and cramping of the bilateral arms, with aching, shooting, and throbbing pain, and arm and hand weakness manifested by difficulties lifting the arms above the shoulder, bending the elbow, gripping, flexing, and extending the wrist; severe, intermittent pain in the lumbar spine with pain radiating to the bilateral hip, knee, leg, ankle and foot, associated with numbness, stiffness, and cramping; and severe, intermittent pain of the bilateral leg, although predominantly the left leg, causing leg weakness manifested by imbalance, falling, difficulty with stairs, and a subjective sense of "giving away." (TR 726). Dr. Claybrooks observed that Plaintiff's history included reports that she could stand for six to seven minutes, sit for fifteen minutes, and walk for one minute. (TR 726). On physical examination Dr. Claybrooks observed that Plaintiff's blood pressure was controlled; she was oriented to time, place and person; her affect

was normal; she had normal spinal balance, normal posture of the cervical spine with no local tenderness and normal range of motion, and normal lumbar spine range of motion with no local tenderness. (TR 727-28). He observed that Plaintiff's MRI of the thoracic spine showed generalized age-related changes with no evidence of severe cord compression. (TR 728). He diagnosed Plaintiff with possible myelopathy, prescribed Ultram for pain control, and recommended that Plaintiff undergo an MRI without contrast of the cervical spine.

On September 6, 2009 Plaintiff presented to Sinai-Grace Hospital after having a seizure on the one year anniversary of her daughter's murder. (TR 706, 709). Plaintiff reported that her last seizure was three years earlier. (TR 709). A CT scan of the head with and without contrast showed negative findings for intracranial hemorrhage lesions. (TR 707). The medical report shows that Plaintiff was awake, alert and oriented times three, she had full range of motion in her extremities, and no gait abnormalities. (TR 710). Her hypertension was stable and controlled on medication. (TR 707). Plaintiff was given Ativan which stopped the seizures.

In November 2009, Dr. Steven Kohl of Botsford Primary Care Physicians completed a Social Security Attending Physician's Statement in which he opined that Plaintiff requires complete freedom to rest frequently without restriction, and she is not capable of reaching or extending her hands or arms in any direction, handling, seizing, holding, grasping, turning, fingering, picking, or pinching if done repetitively. (TR 733). Dr. Kohl determined that Plaintiff's arthritis and closed head injury precluded her from lifting or carrying objects of any weight. (TR 734). He opined that Plaintiff's bilateral ankle fractures and arthritis did not affect her ability to sit, but did prevent her from standing or walking for any amount of time in an eight-hour day. (TR 734-35). Dr. Kohl determined that Plaintiff's closed head injury completely precluded her from climbing, balancing,

9

stooping, crouching, kneeling, or crawling.  He determined that Plaintiff could see, hear, and speak, but could not reach, handle, finger, feel, or push/pull.  (TR 735).  Dr. Kohl further opined that Plaintiff's diagnosis of allergic rhinitis barred her from any kind of dust exposure.  Finally, Dr. Kohl opined that Plaintiff was completely unable to work and he gave her a prescription for a motorized wheelchair.  (TR 731, 736).

Mental Health records dated April 29, 2008 show that Plaintiff received psychiatric care shortly after she was assaulted by her ex-husband.  Plaintiff was diagnosed with marked restrictions in activities of daily living and concentration, persistence, or pace; extreme limitations in interpersonal functioning; and marked limitations in adaptation to change.  (TR 746).  In November 2008, shortly the death of her daughter, Plaintiff received psychiatric care related to complaints of depression, racing thoughts, and sleep disturbances.  (TR 741).  At that time Plaintiff was diagnosed with major depressive disorder, bipolar disorder, and was assigned a GAF of 42.  (TR 742).

## IV.   VOCATIONAL EXPERT TESTIMONY

The Vocational Expert (VE) testified that Plaintiff's past relevant work as a collector and her past work as a purchasing assistant constituted semiskilled, light work; her past work as a sorter was unskilled, light work; that of production worker was unskilled, medium work; and her work as a telephone operator was semiskilled, sedentary work.  (TR 44).

The ALJ asked the VE to testify whether jobs were available for an individual with Plaintiff's age, education, and past relevant work experience who requires simple, unskilled, sedentary work; frequent fine finger manipulation and handling with the right dominant hand; no commercial driving; and no work at unprotected heights, around dangerous moving machinery, open flames, or bodies of water.  (TR 45).  The VE testified that while such an individual would not be

10

able to perform Plaintiff's past relevant work, the individual could perform a large body of unskilled, sedentary work as an office clerk, hand packer, or hand sorter, comprising 228,000 jobs in the national economy. (TR 45-46). The ALJ added the conditions that the individual had interference caused by pain, occasional lapses because of seizures, problems with memory, and side effects from medication requiring them to be off-task an average of fifteen minutes out of every hour. (TR 46). The VE testified that these added limitations would preclude employment. If the individual has the ability to stay on task but requires a one-hour break during the day to lie down, or the individual would miss more than two days per month, there would be no work available. (TR 47).

## V.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since December 6, 2007, and suffers from the severe impairments of seizure disorder, arthritis in the left and right ankles, residuals of fracture to metacarpal of the right hand, residuals of back injury with compression fracture at T8, chronic alcoholism, anxiety and depression, she does not have an impairment or combination of impairments that meets or equals a listed impairment. (TR 54-58). The ALJ determined that Plaintiff retains the residual functional capacity (RFC) to perform simple, unskilled sedentary work with frequent handling but no repetitive handling with the right hand; no work at unprotected heights, around dangerous moving machinery, open flames, or bodies of water; and no commercial driving. (TR 58-63). The ALJ concluded that Plaintiff is unable to perform her past relevant work, but could perform a significant number of jobs in the national economy. (TR 63-64). Consequently, the ALJ found that Plaintiff has not been under a disability as defined in the Social Security Act from December 6, 2007 through January 13, 2010, the date of the ALJ's decision.

2:11-cv-12254-BAF-MKM   Doc # 16   Filed 07/16/12   Pg 12 of 23   Pg ID 881

VI.    LAW AND ANALYSIS

A.    Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

B.    Framework for Social Security Disability Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. she was not presently engaged in substantial gainful employment; and
2. she suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. she did not have the residual functional capacity to perform her past relevant work.

12

20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  If Plaintiff's impairments prevented her from doing her past relevant work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if she could perform other work.  If she could not, she would be deemed disabled.  20 C.F.R. §§ 404.1520(g), 416.920(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments.  *Id.* (citations omitted).

## C.    Analysis

Plaintiff argues that the ALJ erred by omitting the claimant's diagnoses of closed head injury and posttraumatic stress disorder in his step two analysis and erred in concluding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the listing of impairments.  She also argues that the ALJ's assessment of Plaintiff's credibility, assessment of claimant's RFC, and conclusion that Plaintiff is capable of performing substantial gainful activity is not supported by substantial evidence.

First, Plaintiff claims that the ALJ erred in step two of the sequential analysis by omitting closed head injury and posttraumatic stress disorder as severe impairments.  It is well-established that the finding of severe impairments at step two is a threshold determination.  Once the ALJ finds that the claimant suffers from at least one serious impairment, he must continue the sequential

13

analysis until he reaches a finding on disability. *Maziarz v. Sec'y of Health & Human Servs*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that Plaintiff suffered from seven severe impairments, but did not include in that analysis the diagnoses of closed head injury or posttraumatic stress disorder. Nevertheless, the ALJ continued the sequential analysis and considered Plaintiff's closed head injury in his RFC assessment. (TR 60-61). Additionally, while the ALJ did not expressly discuss the diagnosis of posttraumatic stress disorder, he did discuss specific medical reports in which that diagnosis was made. (TR 60). The ALJ also indicated that he considered the totality of the evidence in evaluating the combined impact of claimant's impairments on her ability to perform normal work activities. (TR 59). The ALJ considered the effects all of Plaintiff's impairments had on her mental functioning and concluded that she retained the RFC to perform sedentary work. The undersigned finds that the ALJ did not err in omitting the impairments of closed head injury and posttraumatic stress disorder from the step two analysis.

Next, Plaintiff argues that the ALJ erred in concluding that her severe impairments did not meet a listed impairment, and further erred by failing to consider whether the combination of her impairments was functionally equal in severity and duration to the medical criteria of a listed impairment. Plaintiff contends that she meets the listing of 1.02(A) as demonstrated by Dr. Patel's March 20, 2008 examination report, which states that Plaintiff ambulates with an unpredictable gait; she was unable to heel, toe, or tandem walk; unable to get on and off the examination table; unable to bend, stoop, carry, push and pull; and she requires a walking aid.

Listing 1.02, Category of Impairments, Musculoskeletal reads:

*Major dysfunction of a joint(s) (due to any cause):* Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically

14

acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;

Listing 1.00(B)(2)(b) defines "inability to ambulate effectively" to include: "having insufficient lower extremity functioning...to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." Listing 1.00(B)(2)(b). Plaintiff has the burden of demonstrating that his impairment meets or equals a listed impairment. *Foster v Halter*, 279 F.3d 348, 354 (6th Cir. 2001) ("A claimant must demonstrate that her impairment satisfies the diagnostic description for the listed impairment in order to be found disabled thereunder.").

The ALJ considered listing 1.02 and concluded that Plaintiff failed to meet or medically equal the listing because Plaintiff's impairments did not meet all of the 1.02 criteria. (TR 57). Specifically, the ALJ found that the medical evidence did not show that Plaintiff meets the definition of ineffective ambulation as defined in 1.00(B)(2)(b). Although evidence shows that Plaintiff was given a prescription for crutches, the ALJ found that Plaintiff used crutches for no more than six weeks. (TR 60). Indeed, evidence suggests that Plaintiff used a cane to assist her with walking, which would not limit the functioning of both of her hands. In addition, the ALJ found that Plaintiff's right hand was only mildly limited. Thus, the ALJ found that Plaintiff did not have the extreme limitation of both upper extremities as described in 1.00(B)(2)(b). The ALJ's determination that Plaintiff did not meet the criteria of listing 1.02 is supported by substantial evidence.

Plaintiff next challenges the ALJ's conclusion that her mental impairments did not meet or medically equal the criteria of listings 12.04 and 12.06. The ALJ considered these listings and

concluded that Plaintiff did not meet the "B" criteria for either listing because she had only mild restrictions in activities of daily living and social functioning, moderate difficulties with regard to concentration, persistence, or pace, and no episodes of decompensation. This finding is consistent with Dr. Solomon's Psychiatric Review Technique. In his assessment, the ALJ cited specific examples in support of his findings. For example, the ALJ concluded that Plaintiff does not have greater than moderate restrictions in concentration, persistence, or pace because by her own admission she was able to concentrate on a television program for up to two hours and focus on a book for thirty minutes. (TR 58). He found that she does not have more than mild limitations in social functioning because the evidence showed that she got along with neighbors, friends, and family. The ALJ observed that the record discloses no evidence that Plaintiff suffered episodes of decompensation. The ALJ also found that the evidence did not establish the presence of the "C" criteria because it did not demonstrate Plaintiff's complete inability to function outside the area of her home. The ALJ observed that the New Center Community Health Services' GAF score of 42 was influenced by Plaintiff's very recent assault by her ex-husband and by the murder of her daughter and was not representative of her overall mental condition. The ALJ's findings are supported by substantial evidence and should not be disturbed.

Next, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility, in assessing the RFC, and in concluding that Plaintiff is capable of performing substantial gainful employment. Plaintiff contends that the ALJ erred in his analysis of the medical evidence, arguing that he should not have placed so much weight on the GAF assessment of Dr. Kelwala because the evaluation was completed before Plaintiff was assaulted and before her daughter was murdered. She also argues that the ALJ should not have minimized the evaluation by a doctor at New Center Community

16

Mental Health Services, wherein Plaintiff was assigned a GAF of 42. Plaintiff further contends that the ALJ should have given controlling weight to the opinion of Dr. Kohl, which concluded that Plaintiff was completely disabled.

As a preliminary matter, Plaintiff's reliance on the New Center Community Mental Health Services' GAF score as an indication of the severity of Plaintiff's mental disorders is misplaced. The Sixth Circuit has observed that the Commissioner "has declined to endorse the [Global Assessment Functioning] score for use in the Social Security and [Supplemental Security Income] disability programs, and has indicated that [Global Assessment Functioning] scores have no direct correlation to the severity requirements of the mental disorders listings." *DeBoard v. Comm'r*, 211 Fed. Appx. 411, 415 (6th Cir. 2006) (citation and internal quotation marks omitted).

An ALJ's findings as to the credibility of the claimant are entitled to great deference if supported by substantial evidence. *Walters v. Comm'r,* 127 F.3d 525, 531 (6th Cir. 1997). Despite deference due, the ALJ's credibility determination must contain "specific reasons ... supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2.

In assessing a claimant's credibility, the ALJ must consider the entire case record, including the objective medical evidence and evidence of: (1) the claimant's daily activities, (2) the location, duration, frequency, and intensity of claimant's pain, (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms, (5) treatment, other than medication, for pain relief, (6) any measures used to relieve the pain, and (7) functional limitations and restrictions due to the pain. 20 C.F.R. §§ 404.1529(c)(3),

17

416.929(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994).

With regard to the opinion of Dr. Kohl, it is well-settled that the opinions of treating physicians are generally accorded substantial deference. In fact, the ALJ must give a treating physician's opinion complete deference if it is supported by clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Here, the ALJ found that Plaintiff's subjective statements concerning the intensity, persistence, and limiting effects of her symptoms were not fully credible. (TR 59). The ALJ cited Plaintiff's physical examinations, noting that the examinations demonstrated that while Plaintiff had mild swelling and tenderness along the joint line of her foot, she was ambulating with a regular shoe. X-rays of the right hand taken after Plaintiff was assaulted by her ex-husband demonstrated satisfactory healing. Plaintiff's left ankle showed significant arthritis, yet it was stabilized with the Arizona brace. The ALJ noted that Dr. Linard recommended no further treatment for the right foot and hand, and continued use of the brace on the left ankle. Dr. Linard also recommended that Plaintiff begin physical therapy, although the records submitted to the ALJ did not indicate that she followed that advice.

The ALJ observed that examining physician Dr. Patel found that Plaintiff had limited range of motion in her right shoulder, elbow, and wrist, but that Plaintiff's treating physician, Dr. Louis Rentz, determined that Plaintiff had full range of motion in her shoulder and a stable gait. The ALJ opined that the limitations imposed by Plaintiff's ankle, knee, shoulder, and wrist impairments led to a limitation of sedentary work requiring only frequent but not repetitive handling with the right hand. (TR 60). He then considered Plaintiff's physical impairments of neck and back pain, a closed

18

head injury, seizure disorder, depression, and anxiety, and concluded after reviewing the medical evidence that no additional functional limitation should be added to the RFC to account for these impairments.  (TR 60-61).  The ALJ restricted Plaintiff from commercial driving, from work at unprotected heights, and from work around dangerous moving machinery, open flames, or bodies of water to accommodate her seizure disorder and dizziness from medication side effects.  (TR 61).

The ALJ reviewed the medical evidence concerning Plaintiff's anxiety and depression, and concluded that Dr. Solomon's assessment that Plaintiff had moderate limitations regarding detailed instructions and maintaining attention and concentration for extended periods was consistent with the medical evidence.  He concluded that Plaintiff's mental impairments of depression and anxiety restrict her to simple, unskilled work.  (TR 63).

The ALJ also took into account statements made by Plaintiff that directly contradicted the evidence.  For instance, the medical record shows that Plaintiff was admitted to the hospital in October 2007 with an elevated blood alcohol level of 221 and a history of seizures.  (TR 61).  On admission Plaintiff admitted to drinking one pint of alcohol per day.  Treating physicians concluded that the seizures were secondary to her alcohol consumption.  Nevertheless, the ALJ noted that Plaintiff vehemently denied a history of drinking at the administrative hearing.  In addition, Plaintiff claimed to suffer three to four grand mal seizures per month when the medical evidence demonstrates that Plaintiff's seizures were very infrequent.

The ALJ determined that the objective medical evidence did not support Plaintiff's claims of disabling symptoms and limitations and he cited specific examples from the medical record that refuted Plaintiff's claims.  Additionally, the ALJ opined that Dr. Kohl's July 2008 and November 2009 medical reports were only entitled to limited weight because they were not well-supported by

medically acceptable clinical and laboratory diagnostic techniques, and "amounts to an assertion of complete functional limitations based on what the majority of the medical evidence shows to be mild arthritis, a fairly controlled seizure disorder, and controlled depression and anxiety." (TR 62). The undersigned finds that the ALJ's credibility finding is supported by substantial evidence and should be accorded deference. The undersigned further concludes that the ALJ's decision to afford only limited weight to the opinion of Dr. Kohl was supported by substantial evidence, as was the ALJ's RFC finding.

Next, Plaintiff argues that the ALJ's hypothetical failed to accurately portray Plaintiff's limitations because it did not take into account Plaintiff's deficiencies in concentration. "[T]here is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in concentration. Rather, this Court must look at the record as a whole and determine if substantial evidence supports the ALJ's decision." *Taylor v. Comm'r*, No. 10-12519, 2011 WL 2682682, at *7 (E.D. Mich. May 17, 2011). When the ALJ makes a finding that a claimant has moderate limitations with concentration, persistence or pace, "but does not specifically include that limitation in the hypothetical question, the question is whether the ALJ used adequate alternate concrete job restrictions in the hypothetical question that suitably accommodated the worker's concentration limitations." *Tinker v. Astrue*, No. 08-11675, 2009 WL 3064780, at *8 (E.D. Mich. Sept. 22, 2009).

Here, Dr. Solomon assessed Plaintiff with moderate deficits regarding detailed instructions and maintaining attention and concentration for extended periods, and found that Plaintiff retained the ability to engage in simple, unskilled work. The ALJ concluded that this limitation was consistent with the manifest weight of the medical evidence and with Plaintiff's statements regarding

20

impaired memory and concentration.  The ALJ considered this evidence in addition to other record evidence showing that Plaintiff was able to concentrate on a television program for one to two hours and focus on a book for thirty minutes.

The ALJ considered the evidence before him and crafted a hypothetical that accurately portrayed Plaintiff's concentration deficits and limited Plaintiff to simple, unskilled work.  The Court should find that the ALJ's hypothetical and determination that Plaintiff has the RFC to perform a significant number of jobs in the national economy is supported by substantial evidence in the record.

Finally, Plaintiff contends that the ALJ incorrectly concluded that her depression and anxiety were controlled, and asserts that psychiatric records submitted to the Appeals Council rebut this finding.  "[E]vidence submitted to the Appeals Council after the ALJ's decision cannot be considered part of the record for purposes of substantial evidence review."  *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (citing *Cline v. Comm'r*, 96 F.3d 146, 148 (6th Cir. 1996)).  "'The district court can, however, remand the case for further administrative proceedings in light of the evidence, if a claimant shows that the evidence is new and material, and there was good cause for not presenting it in the prior proceeding.' " *Id*.  The party seeking remand has the burden of showing that it is warranted.  *Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988).  "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ."  *Foster*, 279 F.3d at 357 (*citing Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).

Plaintiff claims that April 26, 2010 records from Botsford Center for Rehabilitation and Health Improvement - Occupational Therapy Upper Extremity Initial Evaluation, an April 26, 2010

21

Physical Therapy record, and June 2010 records from Sinai Grace Hospital Department of Psychiatry will refute the ALJ's conclusion that Plaintiff's anxiety and depression were being controlled, and will support an earlier determination that Plaintiff had posttraumatic stress disorder. Plaintiff claims she has good cause for failing to submit the records to the ALJ because the reports were part of Plaintiff's ongoing treatment and were not completed until after the ALJ issued his written opinion denying Plaintiff's claim. Although "good cause" is not established solely because the new evidence was not generated until after the ALJ's decision, the Court will accept Plaintiff's claim that these records were part of her ongoing medical treatment and will assume for purposes of these motions that Plaintiff has met the good cause requirement. However, in addition to good cause Plaintiff must show that the new evidence is material. Here, the new medical reports were completed in April and June 2010 and reflect Plaintiff's condition as of those dates. The records do not reveal material evidence pertaining to Plaintiff's alleged disability beginning December 6, 2007. The undersigned concludes that Plaintiff has not demonstrated that a sentence six remand is justified.

**<u>REVIEW OF REPORT AND RECOMMENDATION</u>**:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant

22

to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: July 16, 2012              s/ Mona K. Majzoub
                                  MONA K. MAJZOUB
                                  UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: July 16, 2012              s/ Lisa C. Bartlett
                                  Case Manager